IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICIA ELIZABETH NOSIE, | ) | Civ. No. 10-00062 ACK-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATION OF FLIGHT | ) | |
| ATTENDANTS - CWA, AFL-CIO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR REMAND, AND (2) GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS**

**BACKGROUND**[1/]

On January 6, 2010, Plaintiff filed a document titled "Lawsuit for Answers about, and Relief from, Such Treatment by Defendant that Resulted in Undue Suffering upon Plaintiff" in state court ("Complaint").  Plaintiff identified the "Defendant" as "Association of Flight Attendants - CWA, AFL-CIO, Namely: Mark C. Stotik."  The Complaint explains that Mark C. Stotik ("Defendant Stotik") is a staff attorney for the Association of Flight Attendants - CWA, AFL-CIO ("AFA") (collectively, "Defendants").

Although Plaintiff's Complaint is only four pages in length, she alleges the following.  Plaintiff was a flight

---

[1/] The facts as recited in this Order are for the purpose of disposing of the current motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

attendant employed by go! Airlines ("go!"), owned by Mesa Airlines, Inc. ("Mesa").  Compl. ¶ 1.  Some time prior to October 31, 2007, Mesa terminated Plaintiff's employment.  <u>Id.</u>  As a result of Plaintiff's termination, AFA filed a grievance challenging her termination on or around October 31, 2007, and represented Plaintiff during a grievance process through June 11, 2008.  <u>Id.</u>

Plaintiff's grievance was heard by the Mesa-AFA System Board of Adjustment ("System Board") pursuant to Section 15 of the Collective Bargaining Agreement between Mesa and AFA ("CBA") on April 29, 2008.  Compl. ¶ 2, Question 2 ("Q. 2"), Ex. C. After hearing, the members of the System Board were deadlocked and unable to resolve Plaintiff's grievance.  <u>Id.</u>  The next step would have been arbitration.  <u>Id.</u>

On June 11, 2008, Defendant Stotik sent Plaintiff a letter in which he informed her that AFA had decided not to take her case to arbitration, explaining that AFA did not believe it would prevail in arbitration.  <u>Id.</u>  Defendant Stotik further informed Plaintiff that the grievance had not been withdrawn and that she could proceed to arbitration at her own expense.  <u>Id.</u> Plaintiff asserts that this decision by AFA violates Section 15.I of the CBA.  <u>Id.</u>, Ex. B.

Plaintiff also complains of two character-damaging letters written against her by two Mesa pilots that were entered

into her personnel file.  Compl. ¶ 2, Question 1 ("Q. 1").

Plaintiff explains that she was only made aware of the letters on

an unidentified date when an unemployment representative from the

Kauai unemployment office informed her that she had received the

letters with Mesa's submission regarding the reasons for

Plaintiff's termination.  Id., Ex. A.  Plaintiff alleges that the

letters were placed in her file in violation of Section 26.C of

the CBA and asserts that AFA should have addressed and sought

resolution of this violation during the grievance process.  Id.,

Ex. B.

As a result of these actions, Plaintiff poses two

questions that she wishes to be answered.  Question one asks:

> Why did Defendant not address the issue, and seek
> resolution, of the two character-damaging letters
> . . . written against me by two go! pilots entered
> into my Personnel file, an Act which . . .
> violates Section 26 General - C of the AFA
> Agreement[]?

Id. ¶ 2, Q. 1.  Question two asks:

> What exactly about my Grievance caused the
> decision to be made that ". . . the Union will not
> be taking your case to arbitration.  Based on the
> evidence in the case, we did not believe that we
> would prevail at arbitration," an Act, to my
> understanding, violates Section 15 [of the CBA].

Id. ¶ 2, Q.2.

Paragraph 3 of Plaintiff's Complaint does not pose any

additional questions, but instead appears to put her questions in

context.  Plaintiff declines to "speculate as to the reasons for

Defendant's actions".  Compl. ¶ 3, p. 3.  However, she states that she has to:

> face the reality that as much as [she] believe[s] there should not be a need to play any race, gender, color or age 'cards' because cruelty is cruelty and metes out harm no matter what 'cards' are involved . . . [she] hold[s] all of the aforementioned in [her] Hand of Life being an African American Woman with Dark Brown Skin and was 50 years of age when [she] received Defendant's non-arbitration notification.

Id.  Plaintiff seeks to "investigate if any or all of those factors had anything to do with how [she] was treated . . . ." Id.  Plaintiff's Complaint was accompanied by a "Dismissal and Notice of Rights" (commonly referred to as a right-to-sue letter) from the Equal Employment Opportunity Commission ("EEOC").  Id., Ex. D.

Plaintiff's Complaint is not limited to discriminatory confines, however, as she states that a reason

> to not limit this Lawsuit to discriminatory confines is the fact that the Answers [she] receive[s] might reveal other factors for Defendant's Actions not specifically covered under the Civil Rights Laws, but which might fall under Laws against violations of U.S. Citizens' Human Rights, as in the instance if certain acts are found to encompass some form of hate-based intent leading to demeaning and harmful acts.

Id.

Finally, Plaintiff states that she is "grateful" for Article I, Section 4 of the Hawai'i Constitution, often referred to as "first amendment rights," which allows her to "petition the

4

government for a redress of grievances." Id.[2/]  She is also

"comforted" by the motto of Hawai'i, which is found in Article

XV, Section 5 of the Hawai'i Constitution:  "Ua mau ke ea o ka

aina i ka pono" (as translated, "The Life of the Land is

Perpetuated in Righteousness").  Id.  Plaintiff believes that the

relief she seeks "will be defined . . . as Revelation of

Defendant's Answers become available . . . ."  Id.

## PROCEDURAL BACKGROUND

On February 3, 2010, with Defendant Stotik's consent,

AFA removed this action to federal court based on federal

question jurisdiction.  See Defendants' Notice of Removal, docket

no. 1.  In the Notice of Removal, AFA noted that it was unclear

whether Plaintiff intended to name AFA, Stotik, or both as the

defendant(s), and stated that, for purposes of removal, AFA is

proceeding as if both are defendants.  Id. at 2 n.1.  AFA also

---

[2/] In its entirety, Article I, Section 4 reads:

> No law shall be enacted respecting an
> establishment of religion, or prohibiting the free
> exercise thereof, or abridging the freedom of
> speech or of the press or the right of the people
> peaceably to assemble and to petition the
> government for a redress of grievances.

Haw. Const. Art. I, § 4.  The rights afforded by Article I,
Section 4 of the Hawai'i Constitution are identical to that of
the First Amendment to the United States Constitution.  See In re
Doe, 76 Hawai'i 85, 94 n. 16, 869 P.2d 1304 (1994) ("The rights
specified in this section are virtually unchanged since
statehood, are often referred to as 'first amendment rights'
because they are identical to those found in the first amendment
to the United States Constitution.").

noted that counsel for AFA represents Stotik as well because he

performed the acts that Plaintiff complains of in his capacity as

an AFA employee and agent.   Id.

     The Notice of Removal explains:

> This lawsuit concerns Defendant's representation
> of Plaintiff, or alleged lack thereof, in
> connection with her termination from Mesa.
> Although Plaintiff does not clearly identify her
> causes of action, it is clear on the face of the
> Complaint that this lawsuit involves a federal
> question.   Specifically, Plaintiff's claim arises
> under Title VII of the Civil Rights Act of 1964,
> 43 U.S.C. § 2000, et seq. ("Title VII") and the
> Age Discrimination and Employment Act, 29 U.S.C.
> §§ 621-634 ("ADEA").   Plaintiff identifies herself
> as an African American woman who was 50 years old
> at the time of the events of which she complains.
> She also cites "the Civil Rights laws" and
> attaches a "Dismissal and Notice of Rights" from
> the EEOC.   Accordingly, Plaintiff's claim clearly
> alleges violations of Title VII and the ADEA.
>
> Plaintiff's claim also arises under the law of the
> duty of fair representation.   An action by a union
> member complaining of her union's representation
> of her, or lack thereof, in connection with a
> grievance or discipline that member has received,
> as Plaintiff has done here, is known as a claim
> for a violation of the duty of fair
> representation. . . .

Id. at 3-4.

     On February 11, 2010, Defendants filed a motion for a

more definite statement on the grounds that (1) it was unclear

whether AFA, Stotik, or both are defendant(s) in this case, (2)

Plaintiff did not include a short and plain statement of her

claim, and (3) Plaintiff did not identify her causes of action

("Defendants' Motion for a More Definite Statement").

6

Defendants' Motion for a More Definite Statement was denied by Magistrate Judge Leslie E. Kobayashi on March 18, 2010.  See Order Denying Defendants' Motion for a More Definite Statement ("Judge Kobayashi's 3/18/10 Order").  She reasoned that, given Defendants' description of Plaintiff's claim in the Notice of Removal, "AFA is able to reasonably respond to Plaintiff's Complaint."  Judge Kobayashi's 3/18/10 Order at 4.

On April 1, 2010, Defendants filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted ("Motion to Dismiss"), which was accompanied by a memorandum in support ("Motion to Dismiss Mem.").  The Motion to Dismiss indicates that it is still unclear whether Plaintiff intended to name AFA, Stotik, or both as the defendant(s).  Motion to Dismiss Mem. at 1.

On June 3, 2010, Plaintiff, appearing pro se, filed a "Plea to Court to Not Allow Removal of My Case," which the Court interprets as a motion for remand ("Motion for Remand").  See Dockets nos. 20, 21.[3/]  Plaintiff's Motion for Remand was accompanied by a letter addressed to the Court dated June 2, 2010 ("Plaintiff's 6/2/10 Letter").  In her Motion for Remand, Plaintiff asserts that this Court does not have federal question

---

[3/] It appears that Plaintiff also filed a similar plea in state court on January 16, 2010.  Because Defendants have since removed this action to federal court, the plea is now properly before this Court.

jurisdiction because she is not alleging discrimination or a breach of the duty of fair representation.  Motion for Remand at 2, 4.[4/]  Instead, Plaintiff asserts that she is simply asking for "answers" as to why Defendant Stotik handled her grievance in the manner that he did.  Id.

On June 9, 2010, Plaintiff filed an opposition to Defendants' Motion to Dismiss ("Pl's Opp'n").[5/]  In her opposition, Plaintiff again asserts that, despite the fact that she identified herself as fifty year old African American female and referred to U.S. Civil Rights laws in her Complaint, she is not alleging discrimination.  Pl's Opp'n at 1-2.  Moreover, Plaintiff asserts "nor is [her] Lawsuit accusing Defendant of unfair representation because [she] had absolutely no opportunity to know [Defendant Stotik's] interactions with any other Flight Attendant grievances."  Id. at 2.

---

[4/] At the hearing on this matter, Plaintiff suggested that she would have to withdraw her motion for remand because she had been told it was untimely.  See 6/21/10 Tr. 18:16-18 (rough draft of transcript) ("Tr.").  Because her motion for remand is based on lack of subject matter jurisdiction, however, her motion for remand was timely filed.  See 28 U.S.C. § 1447(c).  Accordingly, the Court will address the merits of the Motion for Remand.

[5/] Pursuant to Rule 7.4 of the Local Rules of the District Court for the Hawai'i ("Local Rules"), the opposition was due not less than 21 days prior to the date of the hearing, which was May 31, 2010 (the actual due date being May 28, 2010, because May 31, 2010, was a federal holiday).  The Court will accept Plaintiff's untimely opposition, however, as she is proceeding pro se and Defendants were not prejudiced by her untimely filing.

Also on June 9, 2010, Defendant Stotik filed a response to Plaintiff's Motion for Remand ("Defendant's Response"), as well as a reply to Plaintiff's Opposition ("Reply").[6]  With regard to Plaintiff's Motion for Remand, Defendant Stotik asserts that the Complaint clearly invokes federal question jurisdiction because it alleges discrimination in violation of Title VII and the ADEA and a breach of the duty of fair representation. Defendant's Response at 2-5.

In the Reply, Defendant Stotik asserts that while it was previously unclear whether Plaintiff was making a claim against AFA, Stotik, or both, Plaintiff's Motion for Remand makes clear that she is only pursuing a claim against Defendant Stotik. To this end, Defendant Stotik argues that the motion to dismiss should be granted because a union employee cannot be held personally liable for the claims Plaintiff alleges.  Reply at 2-4.

On June 14, 2010, in response to Defendant Stotik's Reply, Plaintiff filed a "clarification," wherein she stated that she intended to sue both Defendant Stotik and AFA ("Pl's Clarification").  Specifically, she stated that it was always her

---

[6] The Reply was filed prior to the filing of Plaintiff's Opposition and therefore responded to arguments raised in Plaintiff's Motion for Remand.  AFA did not file a reply as Defendant Stotik asserts that Plaintiff's Motion for Remand makes clear that she is only pursuing a claim against Defendant Stotik.

intent that "AFA and Stotik comprise 'Defendant'."  Pl's Clarification at 2.

The Court held a hearing on Defendants' Motion to Dismiss and Plaintiff's Motion for Remand on June 21, 2010.

**LEGAL STANDARDS**

I.      **Motion for Remand**

Pursuant to 28 U.S.C. § 1447(c), a party may bring a motion for remand to challenge removal of an action from state court to federal court.  Motions to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal," 28 U.S.C. § 1447(c), otherwise such defects, including a defendant's failure to join the notice of removal, are waived. See Vasquez v. NCTD, 292 F.3d 1049, 1060 n.5 (9th Cir. 2002) ("Even though some Defendants failed to join the notice of removal in this case, no party made a timely motion to remand, thus waiving any potential defect.").

A state court defendant's removal of an action to federal court is proper under 28 U.S.C. § 1441(a) as long as the action could have originally been filed in federal court. Section 1441 is, however, strictly construed against removal. See Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n. 3 (9th Cir. 1990).  The party seeking to remove the case bears the burden of establishing the propriety of removal and the

existence of federal jurisdiction.  See Westinghouse Elec. Corp.
v. Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir.1993);
Nishimoto, 903 F.2d at 712 n. 3.  Courts resolve any doubts about
removal in favor of remanding the case to state court.  See
Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996)
("[F]ederal jurisdiction 'must be rejected if there is any doubt
as to the right of removal in the first instance.'" (quoting Gaus
v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992))).

II.      **Motion to Dismiss**

          Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") permits
dismissal of a complaint that fails "to state a claim upon which
relief can be granted."  "A Rule 12(b)(6) 'dismissal is proper
only where there is no cognizable legal theory or an absence of
sufficient facts alleged to support a cognizable legal theory.'"
Zamani v. Carnes, 491 F.3d 990, 996-97 (9th Cir. 2007) (quoting
Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)(brackets
omitted)).

          Under the rule, review is generally limited to the
contents of the complaint.  Sprewell v. Golden State Warriors,
266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100
F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider
certain materials—documents attached to the complaint, documents
incorporated by reference in the complaint, or matters of
judicial notice—without converting the motion to dismiss into a

motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  <u>See</u> <u>Sprewell</u>, 266 F.3d at 988; <u>Nat'l Ass'n for the Advancement of Psychoanalysis v. California Bd. of Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if

12

doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 1964 (internal citations and quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." <u>Id.</u> at 1973.

## III.      Special Considerations for Pro Se Litigants

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004); <u>Eldridge v. Block</u>, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  <u>Draper v. Coombs</u>, 792 F.2d 915, 924 (9th Cir. 1986); <u>Pembrook v. Wilson</u>, 370 F.2d 37, 39-40 (9th Cir. 1966).  However, "a pro se litigant is not excused from knowing the most basic pleading requirements." <u>American Ass'n of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal. <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992); <u>Eldridge</u>, 832 F.2d at 1136.  However, the court may deny leave to amend where amendment would be futile. <u>Flowers v. First Hawaiian Bank</u>, 295 F.3d 966, 976 (9th Cir. 2002) (<u>citing</u> <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); <u>Eldridge</u>, 832 F.2d at 1135-36.  Similarly, "when the district court transforms a motion to dismiss into a motion for summary judgment, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings and must afford a reasonable opportunity to present all pertinent material." <u>Lucas v. Dept. of Corrections</u>, 66 F.3d 245, 248 (9th Cir. 1995).

**DISCUSSION**

Given the ambiguity surrounding the defendant(s) in this action, the Court will begin by addressing this issue.

**I.        Identifying the Defendant(s)**

In the Notice of Removal, AFA noted that it was unclear whether Plaintiff intended to name AFA, Stotik, or both as the defendant(s), and stated that, for purposes of removal, AFA is

proceeding as if both are defendants.  Defendants' Notice of
Removal at 2 n.1.  Following Plaintiff's Motion for Remand, only
Defendant Stotik filed a reply with respect to Defendants' Motion
to Dismiss, asserting that Plaintiff's Motion for Remand makes
clear that she is only pursuing a claim against Stotik.  <u>See</u>
Reply at 2 ("[I]n her [Motion for Remand], Plaintiff clarified
that she intends that the Defendant in this case be Mark C.
Stotik.").  Defendant Stotik then proceeds to argue that the
Motion to Dismiss should be granted because union officers,
employees, and agents are not subject to individual liability for
acts performed on behalf of the union in the collective
bargaining process.

On June 14, 2010, in response to Defendant Stotik's
Reply, Plaintiff filed a "clarification," wherein she stated that
she intended to sue both Defendant Stotik and AFA.  Specifically,
she stated that it was always her intent that "AFA and Stotik
comprise 'Defendant.'"  Pl's Clarification at 2.

Taking these arguments into consideration, the Court
observes that in order to determine the defendant(s) in this
matter, it must turn to the Complaint.  As noted above, a pro se
litigant's pleadings must be read more liberally than pleadings
drafted by counsel.  <u>Haines</u>, 404 U.S. at 520-21.  However, "a pro
se litigant is not excused from knowing the most basic pleading

15

requirements." <u>American Ass'n of Naturopathic Physicians</u>, 227 F.3d at 1107-08.

In the caption of the Complaint, Plaintiff names the following defendant: "Association of Flight Attendants - CWA, AFL-CIO, Namely: Mark C. Stotik." Compl. ¶ 1. The opening sentence of her Complaint states that she "come[s] before [the Court] as a safe-haven where [she] may face MARK C. STOTIK, Esquire (Defendant)/Staff Attorney with ASSOCIATION OF FLIGHT ATTENDANTS-CWA,AFL-CIO (AFA)." <u>Id.</u> The remainder of Plaintiff's Complaint refers to a singular "Defendant." <u>Id.</u> ¶ 2-3.

In her Motion for Remand, Plaintiff states that she "come[s] before this Honorable Court to use this opportunity presented to [her] by MARK C. STOTIK (Defendant) and his attorney (collectively Defendant/Atty) to Plead to [remand her] Case [to state court] . . . ." Motion for Remand at 1. The Motion for Remand continues to refer to a singular "Defendant."

In her clarification, Plaintiff attempts to explain that "[b]ased on learning from researching how to file a lawsuit, [she] believed that Names provided in the 'v.' section at the beginning of the lawsuit were know was 'Defendant.'" Pl's Clarification at 1. Despite her clarification, the Court finds that the Complaint can only be read as making a claim against a single defendant. Although the Court must construe the Complaint liberally, "a pro se litigant is not excused from knowing the

16

most basic pleading requirements."  <u>American Ass'n of Naturopathic Physicians</u>, 227 F.3d at 1107-08.  Naming multiple or separate defendants is a basic pleading requirement.  In this case, if Plaintiff wishes to add a defendant, the proper course of action would be to file a motion to amend the complaint.  As discussed below, however, this will not be necessary in this instance as the Court is granting Plaintiff leave to amend her Complaint to properly allege certain claims, and to add any additional defendants.

　　　　With regard to whether AFA or Stotik is the defendant, liberally construing Plaintiff's Complaint the Court finds that AFA is the proper defendant.  Although Plaintiff makes specific reference to Defendant Stotik, all of her claims relate to actions Defendant Stotik made in his official capacity as an AFA staff attorney.  That is, the entire Complaint is in relation to AFA's representation, as a whole, during the grievance process.  Further, in the caption AFA is first named as the defendant and Defendant Stotik is identified as the primary union employee who handled her grievance.  Compl. at 1 (the caption reads: "Association of Flight Attendants - CWA, AFL-CIO, Namely: Mark C. Stotik").

　　　　The Court observes that AFA will not be unfairly burdened by interpreting the Complaint as alleging claims against the union because AFA is already actively involved in this case.

In fact, AFA removed the Complaint to federal court with the consent of Defendant Stotik.  <u>See</u> Defendants' Notice of Removal, Ex. B.  In addition, AFA and Defendant Stotik collectively filed the instant motion to dismiss.  Motion to Dismiss at 2 ("Defendant(s) [AFA] and/or Mark C. Stotik . . . hereby moves for dismissal of Plaintiff's Complaint . . . .").

In light the foregoing, the Court finds that AFA is the only defendant in this action.  Hereinafter, the Court will refer to AFA as "Defendant" or "the union" where appropriate.  Having established that AFA is the lone defendant in this action, the Court will now address Plaintiff's Motion for Remand and AFA's Motion to Dismiss.

## II.    Motion for Remand

AFA removed this action on the grounds that Plaintiff's Complaint raises federal questions.  <u>See</u> Defendants' Notice of Removal at 3.  The existence of federal question jurisdiction is tested at the time of removal.  <u>See Sparta Surgical Corp. v. NASD</u>, 159 F.3d 1209, 1213 (9th Cir. 1998).  Courts determine whether a federal question exists based on the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 475 (1998) (citations and internal quotation marks omitted).  A plaintiff, however, cannot avoid

18

removal by failing to plead necessary federal questions.  A federal court may uphold removal, even where there is no federal question on the face of the complaint, if it concludes that the plaintiff has artfully pleaded his claims in this manner.  See id.; see also BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers, 132 F.3d 824, 831-32 (1st Cir. 1997) (applying the artfully pleaded exception in the context of a duty of fair representation claim).  That is, even if a complaint does not specifically allege violations of federal law, if the claims appear to be federal in nature, "then the federal court must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims."  BIW Deceived, 132 F.3d at 831-32.

AFA asserts that Plaintiff's Complaint raises several federal causes of action.  Specifically, AFA states that it is clear from the Complaint that Plaintiff's claim arises under Title VII of the Civil Rights Act of 1964, 43 U.S.C. § 2000, et seq. ("Title VII") and the Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634 ("ADEA").  Defendants' Notice of Removal at 3.  In addition, AFA asserts that Plaintiff is also alleging a breach of the duty of fair representation, which is a federal claim.  Id. at 4.

Upon review, the Court finds that the Complaint clearly invokes federal question jurisdiction.  Despite Plaintiff's

protestations to the contrary, the Complaint alleges

discrimination in violation of federal civil rights laws.

Moreover, the entire Complaint relates to AFA's duty to fairly

represent Plaintiff, and thus the Court finds that the Complaint

alleges a breach of the duty of fair representation.  <u>BIW</u>

<u>Deceived</u>, 132 F.3d at 831-32.

A.   **Title VII and ADEA Discrimination Claims**

Section 703(c)(1) of Title VII makes it "an unlawful

employment practice for a labor organization . . . to

discriminate against[] any individual because of his race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(c)(1).

Section 623(c) of the ADEA defines unlawful practices by labor

organizations.  It provides, in relevant part:

> It shall be unlawful for a labor organization-
> (1) to exclude or to expel from its membership, or
> otherwise to discriminate against, any individual
> because of his age . . . .

29 U.S.C. § 623(c).

Claims of discrimination under Title VII and the ADEA

are evaluated under the burden-shifting framework set forth in

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Beck</u>

<u>v. United Food & Commercial Workers Union, Local 99</u>, 506 F.3d

874, 882 (9th Cir. 2007) (stating that the <u>McDonnell-Douglas</u>

burden-shifting framework applies to a Title VII action against a

union); <u>see also</u> <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1420

(9th Cir. 1990) ("The shifting burden of proof applied to a Title

VII discrimination claim also applies to claims arising under [the] ADEA").

"Adapting the McDonnell-Douglas criteria to a § 703(c)(1) action, a union member can make a prima facie claim of discrimination by introducing evidence that the member 'was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute.'" Beck, 506 F.3d at 882 (internal citation omitted).  Specifically, in cases such as this, the plaintiff must show: (1) the employer violated the collective bargaining agreement with respect to employee; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates that the employee was singled out and treated less favorably than others similarly situated on account of an impermissible criterion, in this case sex, race, color, or age.  Id.; see also Bugg v. Int'l Union of Allied Indus. Workers of Am., Local 507 AFL-CIO, 674 F.2d 595, 598 n.5 (7th Cir. 1982) (internal citations omitted).

In her Motion for Remand, Plaintiff asserts that AFA has "taken [her] heartfelt words out of context" and inferred a federal case.  Motion for Remand at 2 ("Let me state herein with the Gravest of Clarity that I most definitely am not accusing Defendant of discrimination" (emphasis in original)).

21

The well-pleaded complaint rule focuses on the face of the complaint.  See Rivet, 522 U.S. at 475.  As such, the Court shall look to the Complaint to determine whether Plaintiff is asserting discrimination in violation of federal law.  Even if a complaint does not specifically allege violations of federal law, if the claims appear to be federal in nature the court must recharacterize the complaint to reflect that reality.  BIW Deceived, 132 F.3d at 831-32.  Upon review of the Complaint, it is abundantly clear that Plaintiff is asserting discrimination claims based upon federal law.

In the Complaint, after posing her questions regarding the way AFA handled her grievance, Plaintiff states that she must:

> face the reality that as much as [she] believe[s] there should not be a need to play any race, gender, color or age 'cards' because cruelty is cruelty and metes out harm no matter what 'cards' are involved . . . [she] hold[s] all of the aforementioned in [her] Hand of Life being an African American Woman with Dark Brown Skin and was 50 years of age when [she] received Defendant's non-arbitration notification.

Id.  Plaintiff then clearly states that the purpose of the Complaint is to "investigate if any or all of those factors [race, color, sex, and age] had anything to do with how [she] was treated . . . ."  Id.[7/]  Plaintiff proceeds to refer to "Civil

---

[7/] In her Motion for Remand, Plaintiff asserts that she is not alleging discrimination.  However, at the hearing on this
(continued...)

Rights Laws" and violations of "U.S. Citizens' Human Rights." <u>Id.</u> ¶ 3.  Plaintiff also asserts that she does not want to "<u>limit</u> this Lawsuit to discriminatory confines," which logically implies that the lawsuit includes a claim for discrimination.  <u>Id.</u> (emphasis added).  Clearly her Complaint alleges discrimination as she is seeking to determine whether her sex, race, color, or age had anything to do with the way AFA handled her grievance.

Moreover, Plaintiff's Complaint was accompanied by an EEOC right-to-sue letter.  <u>Id.</u>, Ex. D.  In her Motion for Remand, Plaintiff asserts that the EEOC letter made her realize that she "would not be in [her] Right Mind" to sue for discrimination, but if this were the case there would have been no reason to include the EEOC right-to-sue letter at all.  The EEOC right-to-sue letter is dated October 2, 2009, and indicates that she has 90 days to file a lawsuit in federal or state court after receipt of the letter.  Compl., Ex. D.  Plaintiff's lawsuit was filed on January 6, 2010, presumably within 90 days of the receipt of the EEOC right-to-sue letter (Plaintiff does not indicate when she received the letter).  Thus, it seems Plaintiff filed the present

---

[7]/(...continued)
matter Plaintiff indicated that she included the language suggesting discrimination in her Complaint so that she could raise the issue of discrimination if, through discovery, the "answers" she received indicated that she was discriminated against.  Tr. 17:4-7

lawsuit at the direction of the EEOC, which is tasked with administering Title VII and the ADEA.

Accordingly, given Plaintiff's description of herself as a fifty year old African American female with dark brown skin, her reference to civil rights laws, and her attachment of the EEOC right-to-sue letter, the Court finds that removal was proper as Plaintiff has alleged Title VII and ADEA violations.

### B.    Duty of Fair Representation

Alternatively, even if Plaintiff is not alleging discrimination in violation of Title VII or the ADEA, her Complaint clearly asserts a breach of the duty of fair representation, which is a federal claim.

The duty of fair representation is implied under the scheme of the National Labor Relations Act and "imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit." Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985); see also Abrams v. Carrier Corp., 434 F.2d 1234, 1251 (2nd Cir. 1970) (noting that the duty of fair representation "is a federal obligation which has been judicially fashioned from national labor statutes"). That is, the duty of fair representation is derived from a union's statutory right to be the exclusive representative of the members of a designated unit, from which the Supreme Court found an implied statutory obligation to give

24

members equal and fair representation.  <u>See</u> <u>Abrams</u>, 434 F.2d at 1251 (citing <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330 (1953)); <u>see also</u> <u>Cash v. Chevron Corp. et al.</u>, No. C 99-3068, 1999 U.S. Dist. LEXIS 20709, at *4 (N.D. Cal. Oct. 4, 1999) ("The duties related to this representation are defined solely by federal law." (citing <u>Vaca v. Sipes</u>, 386 U.S. 171, 177 (1967))).  Accordingly, the duty of fair representation is a federal question.  <u>Dente v. Int'l Org. of Masters, Mates and Pilots, Local 90</u>, 492 F.2d 10, 11-12 (9th Cir. 1973); <u>see also</u> <u>BIW Deceived</u>, 132 F.3d at 831-32 ("[W]e hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation."); <u>Wegscheid v. Local Union 2911, Intern. Union, Union Auto., Aerospace and Agr. Implement Workers of America</u>, 117 F.3d 986, 989 (7th Cir. 1997) ("[I]t is now settled that any suit to enforce a union's duty of fair representation is within the federal-question jurisdiction of the federal courts."); <u>Gorham v. Transit Works Union of Am., AFL-CIO, Local 100, NYCTA</u>, 98-CV-313, 1999 WL 163567, *3 (S.D.N.Y. Mar. 24, 1999) ("A claim for a breach of the duty of fair representation may be brought in federal court.").

In her Motion for Remand, Plaintiff asserts that nowhere in her Complaint does she "accuse Defendant of unfairly representing [her], which would constitute knowledge on [her]

part that [Defendant Stotik] represented others fairly, which knowledge [she] do[es] not have."  Motion for Remand at 4. Instead, she asserts that she only knows how AFA treated her, and that her lawsuit seeks "answers" as to why they handled her grievance in the manner that they did.  See id.

    Despite Plaintiff's assertions, the Complaint clearly asserts a breach of the duty of fair representation.  That is, the union's representation of Plaintiff during her grievance process is the only matter at issue because the two "questions" Plaintiff poses relate to said representation.  First, Plaintiff alleges that AFA failed to address two character-damaging letters during the grievance process, which presumably alleges a breach of its duty of fair representation.  In addition, Plaintiff also complains of AFA's decision not to take her case to arbitration, which again presumably alleges a breach of the union's duty of fair representation.  BIW Deceived, 132 F.3d at 831-32.

    Indeed, it cannot even be said that Plaintiff's Complaint is "garbed in state-law raiment," as Plaintiff has not alleged any state law causes of action.  Id.  Although Plaintiff states that she is "grateful" for Article I, Section 4 of the Hawai'i Constitution, it does not appear that Plaintiff is asserting any first amendment violations because her rights under Article I, Section 4 of the Hawai'i Constitution do not appear to

be at issue.  Accordingly, because Plaintiff's Complaint alleges a breach of the duty of fair representation, removal was proper.

        In conclusion, because the Complaint alleges claims under Title VII, the ADEA, and the federal duty of fair representation, removal by AFA was proper.  As such, the Court denies Plaintiff's Motion for Remand.

**III.    AFA's Motion to Dismiss**

        Having established that Plaintiff has alleged Title VII, ADEA, and breach of the duty of fair representation claims against AFA, the Court will now address AFA's Motion to Dismiss these claims.

**A.    Title VII and ADEA Discrimination Claims**

        As a preliminary matter, if Plaintiff seeks to amend her complaint to add a claim against Defendant Stotik under Title VII and the ADEA, the Court observes that there is no personal liability under Title VII or the ADEA.  <u>Miller v. Maxwell's Int'l</u>, 991 F.2d 583, 587-89 (9th Cir. 1993).

**i.    Plaintiff has withdrawn her Title VII and ADEA claims**

        As noted above, in her Motion for Remand Plaintiff makes it abundantly clear that she does not wish to pursue a claim based on discrimination.  Motion for Remand at 2 ("Let me state herein with the Gravest of Clarity that <u>I most definitely am not accusing Defendant of discrimination</u>" (emphasis in

original)).  Although the Court has found that the Complaint alleges violations of Title VII and the ADEA, Plaintiff is entitled to withdraw these claims.  At the hearing on this matter, Plaintiff confirmed her desire to withdraw any current claims of discrimination, though she welcomed the opportunity to amend her complaint to properly allege discrimination.  Tr. 19:18-24; 22:6-10; 23:7-14.  Accordingly, Plaintiff's claims based on discrimination are withdrawn.  Because Plaintiff has withdrawn her claims that allege discrimination, the Court denies AFA's Motion to Dismiss Plaintiff's claims based on Title VII and the ADEA as moot.  Further, the Court will disregard any current references to discrimination in the Complaint.  As discussed at the hearing, however, in the event that Plaintiff has withdrawn her claims under the mistaken belief that it will enable her to avoid the federal forum, Plaintiff is granted leave to file an amended complaint which properly alleges discrimination claims under Title VII and the ADEA.  Tr. at 23:11-14.

### ii.  Notice of the Deficiencies of the Complaint

Had Plaintiff not withdrawn her Title VII and ADEA claims, the Court observes that these claims would have been dismissed for failure to state a claim upon which relief can be granted.  Because courts must give pro se plaintiffs notice of the deficiencies in their complaints prior to dismissal, the Court sets forth _infra_ the defects of the current Complaint.  _See_

Ferdik, 963 F.2d at 1261 (noting that before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured).

To prevail on her Title VII claim, Plaintiff must show: (1) the employer violated the collective bargaining agreement with respect to her; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates that the employee was singled out and treated less favorably than others similarly situated on account of an impermissible criterion, in this case sex, race, color, or age.[8/]  Beck, 506 F.3d at 882 (internal citation omitted).

The current Complaint satisfies the first prong and, for the most part, the second prong.[9/]  The Court notes, however,

_____

[8/] Plaintiff's claim for age discrimination is based on the ADEA, however the Court analyzes all of Plaintiff's discrimination claims under a single framework because they involve similar standards.  See McIntyre v. Longwood Central School Dist., No. 09-4597, 2010 WL 2222469, *3 (2d Cir. June 4, 2010) (observing that in order to prevail on Title VII or ADEA claims against a union, a plaintiff must show that the union breached its duty of fair representation and that the plaintiff was singled out and treated less favorably than others who were similarly situated on account of an impermissible criterion (citing Bugg, 674 F.2d at 599 n.5)).

[9/] The second prong is satisfied with respect to the union's alleged failure to address the two character-damaging letters. As discussed infra, Plaintiff has not alleged sufficient facts to support the second prong with respect to the union's decision not

(continued...)

that Plaintiff has not alleged any facts to support the third

prong. Zamani, 491 F.3d 996-97. Plaintiff complains of two acts

by AFA: (1) its failure to challenge two character-damaging

letters written against her that were entered into her personnel

file without her knowledge; and (2) its decision not to take her

case to arbitration.

         To satisfy the third prong, Plaintiff must allege that

she was singled out and treated less favorably than others who

were similarly situated on account of her being a fifty year old

African American female with dark brown skin. Beck, 506 F.3d at

882; see also Greenslade v. Chicago Sun-Times, 112 F.3d 853, 863-

67 (7th Cir. 1997) (observing that a male plaintiff could not

satisfy the third prong where he could not point to any evidence

that the union treated similarly situated female members

differently). Plaintiff, however, has provided no allegations as

to how AFA treated other similarly situated union members who

were not fifty year old African American women with dark brown

skin. Indeed, in her Motion for Remand she candidly admits that

"[n]owhere in [her Complaint does she] accuse Defendant of

unfairly representing [her], which would constitute knowledge on

---

         [9]/(...continued)
to take her case to arbitration, as there are no facts indicating
bad faith on the part of the union and she has withdrawn her
discrimination claims.  If Plaintiff chooses to file an amended
complaint, she must allege facts supporting a claim of
discrimination or bad faith in connection with the union's
decision not to take her case to arbitration.

[her] part that [AFA] represented others fairly, which knowledge
[she] do[es] not have."  Motion for Remand at 4.  Accordingly,
because Plaintiff has not alleged any facts that indicates that
she was singled out and treated less favorably than others
similarly situated on account of an impermissible criterion,
Plaintiff's Title VII and ADEA claims fail to state claims upon
which relief can be granted.

In summary, Plaintiff has withdrawn her Title VII and
ADEA claims.  As Plaintiff is appearing pro se, the Court has
granted Plaintiff leave to file an amended complaint which
properly alleges said claims.[10/]  If Plaintiff chooses to file an
amended complaint alleging violations of Title VII and the ADEA,
she is advised that she must allege <u>facts</u>, not merely pose
questions to be answered, that cure the deficiencies described
above.  Plaintiff is cautioned that if she files an amended
complaint alleging Title VII and ADEA claims, attorney's fees may
be awarded to Defendant if Defendant prevails in the lawsuit.[11/]

---

[10/] Although the second prong of the Title VII and ADEA
analysis requires Plaintiff to establish that the union breached
its duty of fair representation, Plaintiff may also amend her
complaint to assert an independent claim for breach of the duty
of fair representation based on discrimination.  However, as
discussed <u>infra</u>, any such claim is likely barred by the
applicable statute of limitations.

[11/] Under Title VII, a prevailing defendant may recover
attorney's fees where the lawsuit is found to be frivolous,
unreasonable, without foundation, or vexatious.  <u>See</u>
<u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978).
(continued...)

Plaintiff is further advised that she should obtain counsel in this matter.  Although she has indicated that she is unable to afford counsel, <u>see</u> Plaintiff's 6/2/10 Letter at 1, the Court observes that she may seek assistance from an attorney on a pro bono basis.  To assist Plaintiff, the Court has attached to this Order a list of pro bono attorneys whom she may contact regarding representation.

B.    **Duty of Fair Representation**

Given that Plaintiff's discrimination claims have been withdrawn, the Court will now address Plaintiff's duty of fair representation claim.

As a preliminary matter, if Plaintiff wishes to amend her complaint to add Defendant Stotik, it should be noted that he can not be held individually liable for breach of the duty of fair representation.  That is, Defendant Stotik was acting in his capacity as a staff attorney for AFA when he committed the actions or inactions of which Plaintiff complains, therefore he is not subject to individual liability.  <u>Peterson</u>, 771 F.2d at 1257-58 ("It has long been recognized that union officers and

---

[11]/(...continued)
Attorney's fees may also be awarded with respect to unsuccessful ADEA claims if the court finds that a plaintiff has pursued his/her ADEA claim in bad faith.  <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1437 (11th Cir. 1998) (holding that a district court may award attorney's fees to a prevailing ADEA defendant upon a finding that the plaintiff litigated in bad faith).

employees are not individually liable to third parties for acts
performed as representatives of the union in the collective
bargaining process."). This principle also applies to attorneys
who handle union member grievances. Id. at 1257-59 (noting that
"attorneys who perform services for and on behalf of a union may
not be held liable in malpractice to individual grievants where
the services the attorneys perform constitute a part of the
collective bargaining process"). In other words, unfair
representation claims must generally be made only against a
union. Id. at 1259 ("Our decision does not mean that union
members are necessarily without a remedy when attorneys employed
by the union fail to process grievances adequately. If an
attorney's conduct falls within the "arbitrary, discriminatory or
bad faith" test . . . the union member may sue the union for
breach of the duty of fair representation.").

    The Court will now address whether AFA is entitled to
dismissal of Plaintiff's duty of fair representation claim.

### i.   Standard

    A union breaches its duty of fair representation if its
conduct toward a member is arbitrary, discriminatory, or in bad
faith. See Vaca, 386 U.S. at 190; see also Beck, 506 F.3d at
879. Conduct can be classified as arbitrary "only when it is
irrational, when it is without a rational basis or explanation."
Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998); see

also <u>Tenorio v. N.L.R.B.</u>, 680 F.2d 598, 601 (9th Cir. 1982) ("To comply with its duty, a union must conduct some minimal investigation of grievances brought to its attention.").  This deferential standard for arbitrary conduct "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."  <u>Marquez</u>, 525 U.S. at 45-46. However, a union must exercise special care in the discharge context because discharges are the most serious sanction an employer can impose.  <u>Tenorio</u>, 680 F.2d at 602 (citing <u>Griffin v. Int'l Union</u>, 469 F.2d 181, 183 (4th Cir. 1972)).

The duty of fair representation extends to the investigation and representation of a grievance.  <u>See</u> <u>Evangelista v. Inlandboatmen's Union of Pac.</u>, 777 F.2d 1390, 1395 (9th Cir. 1985) ("A union's duty of fair representation includes the duty to perform some minimal investigation, the thoroughness of which varies with the circumstances of the particular case.").  A duty of fair representation claim may also involve a union's decision not to take a grievance to arbitration.  <u>See</u> <u>Herman v. United Bhd. of Carpenters and Joiners</u>, 60 F.3d 1375, 1380 (9th Cir. 1995).

To determine if a union has breached its duty of fair representation, courts must first assess whether the union's alleged breach involved a ministerial or judgmental act.  <u>Wellman v. Writers Guild of Am., W., Inc.</u>, 146 F.3d 666, 670 (9th Cir.

1998); <u>see also</u> <u>Cavanaugh v. S. Cal. Permanente Med. Group, Inc.</u>, 583 F. Supp. 2d 1109, 1129 (C.D. Cal. 2008) ("Purported breaches of the duty of fair representation are analyzed on a continuum where, on one end, acts of judgment are accorded high deference and, on the other, mere ministerial acts are not.").  If the union's conduct was ministerial, the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. <u>Wellman</u>, 146 F.3d at 670.  If the union's conduct was an act of judgment, however, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith, and not if the conduct was merely arbitrary.  <u>Id.</u>  Generally, a plaintiff cannot recover for a union's mere negligence.  <u>United Steelworkers of Am. v. Rawson</u>, 495 U.S. 362, 376 (1990); <u>see also</u> <u>Eichelberger v. Nat'l Labor Relations Bd.</u>, 765 F.2d 851, 857 n.10 (9th Cir. 1985).

A union employee has no absolute right to have a grievance taken to arbitration. <u>Vaca</u>, 386 U.S. at 194-95; <u>see also</u> <u>Smith v. Pac. Bell Tel. Co.</u>, 662 F. Supp. 2d 1199, 1238-39 (E.D. Cal. 2009) (finding that union did not violate the duty of fair representation when it decided not to arbitrate a grievant's case, where the union concluded that the grievant was not credible and could not prevail at arbitration).  The Ninth Circuit considers the decision of whether to arbitrate a grievance as an exercise of the union's judgment, not a

ministerial act.  <u>Stevens v. Moore Bus. Forms, Inc.</u>, 18 F.3d
1443, 1448 (9th Cir. 1994).

 To establish that the union's exercise of judgment was
discriminatory, a plaintiff must adduce "substantial evidence of
discrimination that is intentional, severe, and unrelated to
legitimate union objectives." <u>Amalgamated Ass'n of St., Elec.</u>
<u>Ry. & Motor Coach Employees of Am. v. Lockridge ("Amalgamated</u>
<u>Ass'n")</u>, 403 U.S. 274, 301 (1971) (internal quotations omitted);
<u>see also</u> <u>Vaca</u>, 386 U.S. at 177.  In order to establish that a
union acted in bad faith, a plaintiff must introduce "substantial
evidence of fraud, deceitful action or dishonest conduct" on the
part of the union.  <u>Amalgamated Ass'n</u>, 403 U.S. at 299.

 **ii.  Analysis**

 There are two acts by AFA that allegedly could have
breached its duty of fair representation: (1) its failure to
challenge two character-damaging letters written against
Plaintiff that were entered into her personnel file without her
knowledge; and (2) its decision not to take her grievance to
arbitration.

 a. <u>Failure to Address two Character-Damaging</u>
   <u>Letters</u>

 The first step is to determine whether the failure to
challenge the two character-damaging letters involved a
ministerial or judgmental act.  <u>Wellman</u>, 146 F.3d at 670.  If it
is determined to be a ministerial act, Plaintiff may prevail

36

against AFA if said failure was arbitrary, discriminatory, or in bad faith.  Id.  If, on the other hand, the decision not to challenge the two character-damaging letters was an act of judgment, Plaintiff may only prevail against the union if the act was discriminatory or in bad faith.  Id.  Generally, to determine whether the act was ministerial or judgmental, the Court must examine the facts on a case-by-case basis.  See Beck, 506 F.3d at 881 ("[C]ourts have consistently refused to accept unions' claims that their actions involved any judgment or strategy where the union simply failed to perform some procedural act.").

In this case, the Complaint does not indicate whether AFA knew of the two character-damaging letters and made a decision not to address them during the grievance process, or whether its failure to address the letters was the result of an oversight.  See Compl. ¶ 2, Q.1.  Given that Plaintiff is proceeding pro se, and that all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, the Court construes Plaintiff's Complaint as alleging a breach of a ministerial act because doing so invokes a less stringent standard.  Fed'n of African Am. Contractors, 96 F.3d at 1207.[12]

---

[12] AFA may seek to prove the act was not ministerial by way of a motion for summary judgment.  See Tr. 13:11-13 (AFA asserted that it believed that "discovery would ultimately show that the Union was not culpable . . . .").

Given that Plaintiff has withdrawn her claims of discrimination, and that, as discussed <u>infra</u>, she has not alleged sufficient facts to support an allegation of bad faith, Plaintiff's only claim appears to be that the failure to address the two character-damaging letters was arbitrary.  Conduct can be classified as arbitrary "when it is without a rational basis or explanation."  <u>Marquez</u>, 525 U.S. at 46.  Taking the allegations as true, AFA's failure to address the two character-damaging letters could be classified as arbitrary conduct.  That is, Mesa appears to have breached the CBA by failing to notify Plaintiff of these letters when they were received by Mesa, and by not giving Plaintiff an opportunity to respond to the letters.  <u>See</u> Compl. Ex. B (Section 15 of the CBA states that before a complaint letter may be entered into a flight attendant's personnel file, the employer must first have the flight attendant sign the complaint letter to acknowledge she has seen the letter and give her an opportunity to file a written response).[13]

_____

[13]  The Court notes that when an employer breaches a CBA and a union fails to address the breach, plaintiffs may bring a "hybrid action" pursuant to <u>Vaca</u> against both the employer and the union.  <u>See</u> <u>Vaca</u>, 386 U.S. at 186.  In <u>DelCostello v. Int'l Brotherhood of Teamsters</u>, the United States Supreme Court explained the nature of such a hybrid action brought pursuant to <u>Vaca</u>: "when the union representing the employee [against the employer] in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation . . . an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or
(continued...)

Indeed, at the hearing AFA acknowledged that, although it has not been conclusively determined through discovery, it appears that AFA was ignorant of the two character-damaging letters in Plaintiff's personnel file.  Tr. at 3:13-21; 5:3-5. AFA's counsel explained that the union focused on a different aspect of Plaintiff's grievance, and as a result was not made aware of the two-character damaging letters.  Id. at 3:24-5:2. Specifically, Defendant asserts that Plaintiff represented to the union that her discipline had been presented to her in violation of the CBA, which, upon investigation by the union, turned out to be untrue.  Id. at 3:8-5:5.  Thus, although Plaintiff claims to have given permission to two union representatives to review her

---

13/(...continued)

arbitration proceeding."  See DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164 (1983).  The resulting hybrid action claim comprises two causes of action.  Id.  "The suit against the employer rests on § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], since the employee is alleging a breach of the collective bargaining agreement."  Id.  "The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act."  Id.  To prevail against either the employer or the union, the employee-plaintiff must not only show that his "discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." Id. at 164-65; see also Bliesner v. Commc'n Workers of Am., 464 F.3d 910, 914 (9th Cir. 2006) (noting that "breach of a duty of fair representation by the union is a necessary prerequisite to a successful suit against the employer for a breach of the CBA"); Gibson v. U.S. Postal Serv., 380 F.3d 886, 888-89 (5th Cir. 2004) ("Hybrid § 301 actions are comprised of two elements: 1) an allegation that the employer breached the collective bargaining agreement; and 2) an allegation that the union breached its duty of fair representation." (citations omitted)).

personnel file, AFA asserts that it did not address the two-character damaging letters because Plaintiff complained of a different aspect of her termination.  Id. at 20:10-16.[14/] Nevertheless, it appears that the union may have simply failed to review Plaintiff's personnel file, or forgotten to address the issue during the grievance process.  As a result, if Mesa breached the CBA and AFA failed to address this breach during the grievance process as a result of a ministerial oversight, Plaintiff has a claim against AFA for breach of the duty of fair representation.

In fact, in its Motion to Dismiss AFA acknowledges that Plaintiff has sufficiently alleged an unfair representation claim with respect to its failure to address the letters.  See Defendants' Motion to Dismiss Mem. at 7 ("[Plaintiff] also arguably satisfies the second element [breach of the duty of fair representation] with her allegation that AFA failed to address and seek resolution of those letters.").  AFA disputes that it did not represent Plaintiff fairly with respect to the two character-damaging letters, but resolution of this issue is more properly suited for a motion for summary judgment, rather than a motion to dismiss.

---

[14/] It is unclear whether Section 26.C of the CBA requires the employer to provide the union with a copy of any derogatory letters that the employees are entitled to review.  See Compl. Ex. B.

Accordingly, AFA's Motion to Dismiss Plaintiff's unfair representation claim as it relates to the two character-damaging letters is denied.[15/]   As Plaintiff's claim regarding the failure to address these letters has survived a motion to dismiss on the grounds that said conduct may have been arbitrary, Plaintiff is granted leave to amend her complaint to properly allege an unfair

---

[15/] As AFA has not raised the issue of whether Plaintiff's duty of fair representation claim is barred by the statute of limitations, the Court need not address the issue at this point. Plaintiff should be cautioned, however, that her independent claims for breach of the duty of fair representation appear to be barred by the statute of limitations.  The Supreme Court has held that the NLRA's six-month statute of limitations for the filing of unfair labor practice claims is applicable to suits against a union for breach of the duty of fair representation. DelCostello, 462 U.S. at 169.  In this case, the acts complained of occurred in 2008, which likely means that the statute of limitations has run on these claims.  Moreover, it does not appear that the statute of limitations should be equitably tolled in this instance.  When the law of the forum state regarding equitable tolling is consistent with federal law, the Court should apply state law.  See Johnson v. California, 207 F.3d 650, 653 (9th Cir. 2000).  Under Hawai'i law, to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate "(1) that he . . . has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Office of Hawaiian Affairs v. State, 110 Haw. 338, 360, 110 P.3d 767, 789 (2006) (internal citation omitted).  Plaintiff does not appear to meet either of these requirements.  Further, her decision to wait for an EEOC determination likely would not toll the statute of limitations with regard to her independent breach of the duty of fair representation claim, as parallel avenues of relief are generally not tolled by a Title VII administrative remedy, even if the claims are based on the same facts and directed toward the same ends. Linville v. State of Hawaii, 874 F.Supp. 1095, 1104 (D. Haw. 1994) (citing Johnson v. Railway Express Agency, 421 U.S. 454, 467 (1975)).  That is, "[w]hen a plaintiff fails to timely file claims that are separate, distinct, and independent from her Title VII claims, those claims are barred." Hale v. Hawaii Publications, Inc., 468 F.Supp.2d 1210, 1232 (D. Haw. 2006).

representation claim based on discrimination or bad faith, if she wishes to do so.

### b.   Decision Not to Proceed to Arbitration

The second action Plaintiff complains of is AFA's decision not to take her case to arbitration.[16/]   As noted above, the Ninth Circuit considers the decision of whether to arbitrate a grievance as an exercise of the union's judgment, not a ministerial act.  Stevens, 18 F.3d at 1448.  As a result, Plaintiff may only prevail if AFA's decision not to arbitrate was discriminatory or in bad faith.  Because Plaintiff has withdrawn any claims of discrimination, her claim can only survive a motion to dismiss if it sufficiently alleges bad faith.

In order to establish that a union acted in bad faith, a plaintiff must introduce "substantial evidence of fraud, deceitful action or dishonest conduct" on the part of the union.  Amalgamated Ass'n, 403 U.S. at 299.  In this case, Plaintiff has not alleged any facts to support a claim that Defendant's conduct in declining to take her grievance to arbitration was in bad

---

[16/] AFA told Plaintiff she could proceed to arbitration, but also told her that if she did she would be responsible for retaining her own legal counsel and bearing the costs associated with the arbitration.  Compl. ¶ 2, Q.2, Ex. C.  It appears, however, that Plaintiff asserts that she could not afford the costs of arbitration.  See Plaintiff's 6/2/10 Letter at 1. Accordingly, for purposes of AFA's Motion to Dismiss, the Court construes allowing Plaintiff to proceed only if she paid the costs as the equivalent of refusing to take Plaintiff's grievance to arbitration.

faith.  Plaintiff merely alleges that AFA declined to take her grievance to arbitration because "based on the evidence in the case, [AFA] did not believe that [it] would prevail at arbitration."  Compl. ¶ 2, Q.2.  Plaintiff has not alleged any facts to support a claim of fraud, deceitful action, or dishonest conduct.  <u>Zamani</u>, 491 F.3d 996-97.  Accordingly, Plaintiff's unfair representation claim as it relates to the decision to not take her case to arbitration fails to state a claim upon which relief can be granted.  <u>See Ajifu v. Int'l Ass'n of Machinists and Aerospace Workers (AFL-CIO) District Lodge 141</u>, CV 03-000212, 2003 WL 23739383, *3 (D. Haw. Oct. 14, 2003) ("In the absence of any allegation by Plaintiff that Defendant Union processed her grievance in bad faith or with a discriminatory purpose, Plaintiff has failed to state a claim for breach of the duty of fair representation.")

In light of the foregoing, AFA's Motion to Dismiss Plaintiff's unfair representation claim as it relates to the decision to not take her case to arbitration is granted. Plaintiff is granted leave to amend her complaint to properly allege an unfair representation claim based on discrimination or bad faith if she so wishes.  However, Plaintiff is advised that any independent claim for breach of the duty of fair representation appears to be barred by the applicable statute of limitations.  <u>DelCostello</u>, 462 U.S. at 169.

43

### C.    Any Other Potential State Law Claims

As AFA aptly observes, Plaintiff's Complaint requesting "answers" for the most part appears to be a "fishing expedition." Motion to Dismiss Mem. at 13.  Although Plaintiff suggests that AFA's actions may have violated other "U.S. Human Rights Laws," she does not state any other claims for relief in her Complaint. As discussed <u>supra</u>, her reference to Article I, Section 4 of the Hawai'i Constitution is unavailing because her first amendment rights are not at issue.  Moreover, her reference to Article XV, Section 5 of the Hawai'i Constitution is unhelpful because it does not provide a cause of action.  To survive a motion to dismiss, Plaintiff must state a claim upon which relief can be granted, thus the fact that she is "comforted" by the motto of Hawai'i is unavailing.

Finally, the Court observes that any state law claims that involve AFA's duty to fairly represent Plaintiff are likely preempted by federal law.  <u>See</u> <u>Thomsen v. Sacramento Metro. Fire Dist., et al.</u>, CV 09-01108, 2009 U.S. Dist. LEXIS 97242, *14-*24 (E.D. Cal. Oct. 20, 2009) (finding that the plaintiff's state law claims alleging breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, breach of contract, intentional infliction of emotional distress, and

negligence were subsumed by his duty of fair representation claim).[17]

## CONCLUSION

In light of the foregoing, the Court:

(1) DENIES Plaintiff's Motion for Remand because, properly characterized, her Complaint alleges Title VII and ADEA discrimination claims, as well as a breach of the duty of fair representation;

(2) CONSTRUES Plaintiff's Complaint as alleging a claim only against the union.  Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this

---

[17] State law claims may be preempted by the LMRA where adjudication of such claims would require interpretation of the collective bargaining agreement between the employer and the labor organization.  See Valles v. Ivy Hill Corp., 410 F.3d 1071, 1075 (9th Cir. 2005); Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000).  "To effectuate the goals of [the LMRA], preemption should be applied only to 'state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences flow from breaches of that agreement' and to tort suits which allege 'breaches of duties assumed in collective bargaining agreements.'"  Livadas v. Bradshaw, 512 U.S. 107, 122-23 (1994).
Moreover, the federal duty of fair representation preempts the application of state substantive law which attempts to regulate conduct that falls within the union's duty of fair representation.  Cash, 1999 U.S. Dist. LEXIS at *5 (denying plaintiffs' motion for remand where plaintiffs based their discrimination claims on the assertion that the union failed to represent them adequately).
In the present case, any state law claims Plaintiff may allege are likely preempted by federal law because the entire Complaint relates to AFA's duty of fair representation. Moreover, the rights she asserts and the injuries she alleges are grounded in the CBA and therefore are likely similarly preempted.

Order adding Mark Stotik as a defendant if she wishes to do so. Plaintiff should be aware, however, that union employees cannot be held personally liable for the claims she alleges;

      (3) FINDS that Plaintiff has withdrawn her claims that allege discrimination.  The Court shall disregard any current reference to discrimination in the Complaint.  Now that Plaintiff understands that her Complaint is properly in federal court however, she is granted leave to file an amended complaint within thirty (30) days of the date of this Order properly alleging discrimination under Title VII or the ADEA, or a breach of the duty of fair representation based on discrimination, if she wishes to do so;

      (4) GRANTS IN PART, and DENIES IN PART, Defendant's Motion to Dismiss Plaintiff's claim for breach of the duty of fair representation.  The Court GRANTS the motion with respect to the union's decision not to take Plaintiff's grievance to arbitration as she has not alleged any facts to support a claim of bad faith and has withdrawn her claims based on discrimination.  The Court, however, DENIES the motion with respect to the union's failure to address the two character-damaging letters during the grievance process as the union's failure to do so could amount to a breach of its duty of fair representation.  Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Order

properly alleging a breach of the duty of fair representation based on bad faith, if she wishes to do so.  Plaintiff should be aware, however, that her independent claims for breach of the duty of fair representation appear to be barred by the statute of limitations.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, June 28, 2010.



_____
Alan C. Kay
Sr. United States District Judge

Nosie v. Association of Flight Attendants, CWA, AFL-CIO, Civ. No. 10-00062 ACK-LEK: Order (1) Denying Plaintiff's Motion for Remand, and (2) Granting in Part, and Denying in Part, Defendant's Motion to Dismiss

## PRO BONO PANEL

1.   Kurt A. Gronau, Esq.
     900 Fort Street Mall, Ste. 909
     Honolulu, Hawaii 96813
     Tel. 526-9561


2.   Lea O. Hong, Esq.
     737 Bishop Street, Ste. 2600
     Honolulu, Hawaii 96813
     Tel. 547-5400


3.   Edmond K. Ikuma, Esq.
     2056 Mohala Way
     Honolulu, Hawaii 96822
     Tel. 586-6933 or 942-7118


4.   Lila Barbara Kanae, Esq.
     550 Halekauwila Street, Ste. 304-1
     Honolulu, Hawaii 96813
     Tel. 848-5494


5.   Richard Paul McClellan, III, Esq.
     3608A Sierra Drive
     Honolulu, Hawaii 96816
     Tel. 735-6423


6.   Corey Y.S. Park, Esq.
     1001 Bishop Street, Ste. 1300
     Honolulu, Hawaii 96813
     Tel. 524-1212


7.   David M. Raatz, Jr., Esq.
     733 Bishop Street, Ste. 170-436
     Honolulu, Hawaii 96813
     Tel. 536-4965

8.   Eric A. Seitz, Esq.
     820 Mililani Street, Ste. 714
     Honolulu, Hawaii 96813
     Tel. 533-7434

9.   Bruce H. Wakazawa, Esq.
     1001 Bishop Street, 18th Floor
     Honolulu, Hawaii 96813
     Tel. 524-1800


10.  Legal Aid Society of Hawaii
     1108 Nuuanu Avenue
     Honolulu, Hawaii 96813
     Tel. 536-4302


11.  Hawaii Lawyers Care
     1040 Richards Street, Ste. 301
     Honolulu, Hawaii 96813
     Tel. 528-7046