IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PATRICIA ELIZABETH NOSIE,    ) Civ. No. 10-00062 ACK-LEK
    )
        Plaintiff,    )
    )
    vs.    )
    )
ASSOCIATION OF FLIGHT    )
ATTENDANTS - CWA, AFL-CIO,    )
    )
        Defendant.    )
_____)

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### PROCEDURAL BACKGROUND

On January 6, 2010, Plaintiff filed a document titled "Lawsuit for Answers about, and Relief from, Such Treatment by Defendant that Resulted in Undue Suffering upon Plaintiff" in state court ("Complaint").  Plaintiff identified the "Defendant" as "Association of Flight Attendants-CWA, AFL-CIO, Namely: Mark C. Stotik."  The Complaint explained that Mark C. Stotik ("Stotik") is a staff attorney for the Association of Flight Attendants-CWA, AFL-CIO ("Defendant" or "AFA").

On February 3, 2010, with Stotik's consent, AFA removed this action to federal court based on federal question jurisdiction.  Doc. No. 1.

On April 1, 2010, Stotik and Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted ("First Motion to Dismiss").

Doc. No. 12.  On June 3, 2010, Plaintiff filed a "Plea to Court to Not Allow Removal of My Case," which the Court interpreted as a motion for remand.  Doc. Nos. 20-21.  The Court held a hearing on the First Motion to Dismiss and Plaintiff's Motion for Remand on June 21, 2010.

On June 28, 2010, the Court issued an Order (1) Denying Plaintiff's Motion for Remand, and (2) Granting in Part, and Denying in Part, Defendant's Motion to Dismiss ("6/28/10 Order").  Doc. No. 28.  In its 6/28/10 Order, the Court found that the Complaint alleged claims against Defendant only, and not Stotik.  6/28/10 Order at 14-18.  The Court then granted Defendant's motion to dismiss with regard to Plaintiff's duty of fair representation claim concerning AFA's decision not to take Plaintiff's grievance to arbitration.  Id. at 46.  The Court denied Defendant's motion to dismiss with regard to Plaintiff's duty of fair representation claim concerning AFA's alleged failure to challenge two character-damaging letters during the grievance process.  Id.  Although the Court found that Plaintiff had withdrawn any claims alleging discrimination, it granted Plaintiff leave to file an amended complaint within thirty days to allege discrimination in violation of Title VII of the Civil Rights Act of 1964, 43 U.S.C. § 2000e, et seq. ("Title VII") or the Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), or to allege a breach of the duty of fair

2

representation based on discrimination.  Id.  The Court also

granted Plaintiff leave to add Mark Stotik as a defendant, and to

allege a breach of the duty of fair representation based on bad

faith.  Id. at 45-47.

On July 26, 2010, Magistrate Judge Kobayashi held the

second Rule 16 scheduling conference in this case; Plaintiff had

not appeared at the first scheduling conference, which was set

for May 3, 2010.  Doc. Nos. 16, 30.  Plaintiff also failed to

appear for the July 26 second scheduling conference.

On July 28, 2010, Plaintiff filed an amended complaint

("Amended Complaint"), which added, inter alia, claims for

discrimination under Title VII and the ADEA.  Doc. No. 31.  A

number of exhibits, including letters and emails, were attached

to the Amended Complaint.[1/]  The Amended Complaint did not add

Mark Stotik as a defendant.

On August 6, 2010, Magistrate Judge Kobayashi issued a

Findings and Recommendation that this case be dismissed without

prejudice on account of Plaintiff's failure to appear at the Rule

---

[1/] The exhibits upon which this Order relies are considered
by the Court to be incorporated into the Amended Complaint.  See
Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an
exhibit to a pleading is a part of the pleading for all
purposes."); Lehn v. Holmes, 364 F.3d 862, 872 (7th Cir. 2004)
(finding that a letter attached to a complaint was incorporated
into the complaint for purposes of ruling on a motion to dismiss
under Fed. R. Civ. P. 12(b)(6)).

16 scheduling conferences and her failure to file a scheduling conference statement ("8/6/10 F & R").  Doc. No. 32.

On August 17, 2010, Defendant filed a motion to dismiss the Amended Complaint ("Motion").  Doc. No. 33.

On August 18, 2010, Plaintiff filed an objection to Magistrate Judge Kobayashi's 8/6/10 F & R, and on August 31, 2010, Defendant filed a response to Plaintiff's objection.  Doc. Nos. 36, 41.  The Court rejected Magistrate Judge Kobayashi's 8/6/10 F & R to dismiss this case without prejudice on September 20, 2010 ("9/20/10 Order").  Doc. No. 42.[2]

On September 25, 2010, Plaintiff filed an opposition to Defendant's motion to dismiss the Amended Complaint ("Opp'n").  Doc. No. 45.  On November 4, 2010, Defendant filed a reply in support of its Motion ("Reply").  Doc. No. 46.  The Court held a hearing on the Motion on November 15, 2010.[3]

---

[2] Also on September 20, 2010, Defendant filed a "Second Motion to Dismiss Original Complaint."  Doc. No. 43.  After the Court assured Defendant that Plaintiff's Complaint had been superceded by the Amended Complaint, Defendant withdrew this motion on September 22, 2010.  Doc. No. 44.

[3] On the morning of the hearing in this matter, Plaintiff submitted to the Court, and not to Defendant, two letters written by counsel for Defendant concerning Plaintiff's January 2009 EEOC charge against Defendant.  It is unnecessary for the Court to consider these improperly submitted documents in ruling on the instant motion to dismiss.  Moreover, even if the Court were to consider these documents, the Court would reach the same conclusion regarding Plaintiff's claims.

4

FACTUAL BACKGROUND

On January 5, 2007, Plaintiff was hired as a flight attendant for go! Airlines, owned by Mesa Airlines, Inc. (collectively, "Mesa").  Compl. ¶ 1; Am. Compl. Ex. C.  On July 23, 2007, Plaintiff received a "verbal warning" for attendance-related "occurrences."  Am. Compl. Ex. C at 1; see also id. Ex. E-2 at 1, Ex. E-3 at 1-2.  On August 1, 2007, Plaintiff received a "written warning" for "non compliance to uniform standards." Id. Ex. C at 2.  This warning stated that "[a]ny further occurrences or infractions will result in an ACTIVE LETTER OF TERMINATION."  Id.  Plaintiff was issued an Active Letter of Termination on August 13, 2007, which stated that any further occurrences would result in immediate termination.  Id. Ex. C at 3.

On October 25, 2007, Plaintiff was asked to attend a meeting in full uniform at Mesa's Honolulu office.  Am. Compl. at 2.  Not knowing what the meeting was about, Plaintiff felt nauseous and informed Mesa she was too sick to attend.  Id.  The next day, Plaintiff received a call from AFA representative Jamie McClay ("McClay").  Id.  The two discussed the discipline Plaintiff had received.  Id. at 3-4.  McClay asked Plaintiff if she had ever been asked to sign anything on the aircraft (i.e., disciplinary notices), and Plaintiff responded that she had.  Id.

at 4.  McClay informed Plaintiff that such practice was against policy, and would be challenged in Plaintiff's grievance.  Id.[4/]

Mesa terminated Plaintiff on October 31, 2007.  Id. at 1.  From October 26, 2007, through November 29, 2007, Plaintiff and McClay exchanged a series of emails about Plaintiff's case.  Id. Exs. E-1 to E-8.  In her emails, Plaintiff described her various difficulties at Mesa.  Id. Exs. E-1 to E-3.  For example, Plaintiff admitted having trouble getting to work on time and to issues that arose from losing her crew badge.  Id. Ex. E-1 at 1-2.  Plaintiff also complained to McClay about Mesa's failure to train and support her adequately or to discuss Plaintiff's "occurrences" with her.  See id. Exs. E-1 to E-3.

On November 14, 2007, Plaintiff informed McClay that she had learned from an Unemployment Representative that two character-damaging letters written by Mesa pilots had been entered into her personnel file.  Id. Ex. E-4.  Plaintiff and McClay then discussed that the letters had not been mentioned during their October 31, 2007 phone meeting, and that Plaintiff had never been given a chance to talk with anyone about the letters.  Id.  Plaintiff alleges that the letters' placement in her file violated Section 26.C of the Collective Bargaining

---

[4/] Plaintiff alleges that she had not previously told AFA she had a problem with signing disciplinary notices on the aircraft because she had not known this was against policy.  Am. Compl. at 4.

Agreement ("CBA") between Mesa and AFA.   See Compl. ¶ 2, Question

1; Am. Compl. Exs. B, D, E-4.

AFA filed a grievance challenging Plaintiff's

termination on November 10, 2007.   Am. Compl. Ex. E-7 at 3.   The

grievance claimed:

> The Company has unjustly terminated [Plaintiff].   The
> Company when disciplining [Plaintiff] did not follow
> proper procedure by forcing [her] to sign documents
> without having the ability for a one on one meeting nor
> giving her the ability to as[k] for a Union
> representative to be made available to her.   These
> documents were brought to the aircraft between flights
> where she was told to sign them.

Id.   The grievance further stated that Plaintiff "had issues

obtaining a SIDA badge for HNL which is necessary to do her job.

As of the time of the termination, she still had not received her

SIDA badge."   Id.   On November 23, 2007, McClay emailed Plaintiff

that she had filed the grievance but was still waiting to hear

from the unemployment office.   Id. Ex. E-6.   On the same day,

McClay also emailed Plaintiff a copy of the grievance she had

filed.   Id. Ex. E-7.   On November 29, 2007, however, McClay

emailed Plaintiff that the grievance had been withdrawn because

Plaintiff had requested via Company email that the disciplinary

papers be brought to her on the aircraft for signing.   Id. Ex.

E-8.

From December 1, 2007, through about April 17, 2008,

Plaintiff exchanged emails regarding her grievance with AFA

Grievance Chair Andrew Kothlow ("Kothlow").   Id. Exs. E-9 to

E-12.  Plaintiff's grievance was apparently reinstated during
this time, presumably as a result of her complaints about its
having been withdrawn.  <u>See id.</u> Exs. E-9 to E-11.  On February
27, 2008, Plaintiff emailed Kothlow to ask about the status of
her grievance, also providing a grievance statement of her own.
<u>Id.</u> Ex. E-11.  On February 28, 2008, Kothlow emailed Plaintiff
that her grievance was "in the system board phase" and would be
scheduled for a hearing in late March or early April.  <u>Id.</u> Ex.
E-11 at 1.[5/]  Subsequently, Kothlow emailed Plaintiff that the
System Board hearing would be rescheduled because the AFA
attorney's father had died.  <u>Id.</u> Ex. E-12.  Plaintiff's grievance
was ultimately heard by the System Board on April 29, 2008.  <u>Id.</u>
Ex. B. at 1.  The members of the System Board were deadlocked on
a decision, which meant that Plaintiff's "case was not resolved
and c[ould] be taken to arbitration."  <u>Id.</u>

On June 11, 2008, AFA sent Plaintiff a letter informing
her that her case would not be sent to arbitration because,
"[b]ased on the evidence in the case, [AFA] did not believe that

---

[5/] It is unclear whether Defendant withdrew and resubmitted
Plaintiff's grievance or if it never actually withdrew the
grievance, but only told Plaintiff it had done so.  In any event,
the parties reference only one grievance, which is dated November
10, 2007, and the Court presumes that that was the only grievance
ever submitted to Mesa.  Am. Compl. Ex. E-7 at 3.  The Court also
presumes that Defendant did not submit Plaintiff's February 27,
2008, grievance statement to Mesa, as the grievance procedure was
already in the System Board phase by that point.  <u>See id.</u> Ex.
E-11.  Drawing these inferences in favor of Plaintiff accords
with the Court's duty in ruling on the instant motion to dismiss.

[it] would prevail at arbitration."  Id.  The letter notified

Plaintiff that she could pursue arbitration, although she would

be responsible for retaining counsel and bearing the necessary

costs.  Plaintiff subsequently asked AFA how she could appeal its

decision not to take her case to arbitration.  Id. Ex. B. at 2.

In a letter dated August 6, 2008, AFA notified Plaintiff that

"[t]here is no appeal process for such a decision, and the

decision was made in accordance with standard AFA practice in

reviewing cases prior to arbitration."  Id.

       The Amended Complaint alleges that Defendant, willfully

and in bad faith, "sided with" Mesa, the company that terminated

Plaintiff without giving her supervisory meetings and violated

the CBA.  Am. Compl. at 7.  It further alleges that "Defendant

never held an investigative process with [Plaintiff] to

acknowledge what [she] was suffering from, nor did same ever try

to correct the damage done by the [two character-damaging]

Letters."  Id.  The Amended Complaint continues:

> I believe a meaningful investigation into what I was
> going through would have culminated in my regaining FA
> Wings.  If Defendant does not admit to discrimination
> and bad faith dealings with me, I ask again that the
> evidence I have presented herein be able to Speak the
> Discrimination they won't admit...I cannot come up with
> any good reasons why Defendant should have sided with
> [Mesa] against me and willfully kept resolution from me
> of [Mesa's] violation of CBA regarding the Letters.

Id. at 8.

**LEGAL STANDARDS**

## I.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)") permits dismissal of a complaint that fails "to state

a claim upon which relief can be granted."  Under Rule 12(b)(6),

review is generally limited to the contents of the complaint.

Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.

1996).  Courts may also "consider certain materials - documents

attached to the complaint, documents incorporated by reference in

the complaint, or matters of judicial notice - without converting

the motion to dismiss into a motion for summary judgment."

United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Documents whose contents are alleged in a complaint and whose

authenticity is not questioned by any party may also be

considered in ruling on a Rule 12(b)(6) motion to dismiss.  See

Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled

on other grounds by Galbraith v. County of Santa Clara, 307 F.3d

1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations

of material fact are taken as true and construed in the light

most favorable to the nonmoving party.  Fed'n of African Am.

Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.

1996).  However, conclusory allegations of law, unwarranted

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face."  Id. at 570.  "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- 'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

## II.        Special Considerations for Pro Se Litigants

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements."  Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the

12

deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal. Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Eldridge, 832 F.2d at 1136. However, the court may deny leave to amend where amendment would be futile. Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); Eldridge, 832 F.2d at 1135-36. Similarly, "when the district court transforms a motion to dismiss into a motion for summary judgment, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings and must afford a reasonable opportunity to present all pertinent material." Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

I.      **Title VII and ADEA Claims**[6]

    A.      **Statute of Limitations**

       Defendant first contends the Court should dismiss Plaintiff's discrimination claims because they are barred by the applicable ninety-day statute of limitations. Motion at 6-7. Plaintiff offers no substantive arguments in response. Opp'n at

---

[6] Although Plaintiff's age discrimination claim is based on the ADEA, the Court analyzes all of Plaintiff's discrimination claims under a single framework because they involve similar standards. See McIntyre v. Longwood Cent. Sch. Dist., 380 F. App'x 44, 49 (2d Cir. 2010).

1-3.  "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  <u>Supermail Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (quoting <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980)).  A court cannot dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  <u>Id.</u> at 1207.

"Title VII provides that upon dismissing a charge of discrimination, the EEOC must notify the claimant and inform her that she has ninety days to bring a civil action."  <u>Payan v. Aramark Mgmt. Services Ltd. P'ship</u>, 495 F.3d 1119, 1121 (9th Cir. 2007); 42 U.S.C. § 2000e-5(f)(1); <u>see also</u> 29 U.S.C. § 626(e) (establishing the same requirement under the ADEA).  "[T]his ninety-day period operates as a limitations period.  If a litigant does not file suit within ninety days '[of] the date EEOC dismisses a claim,' then the action is time-barred."  <u>Payan</u>, 495 F.3d at 1121 (citations omitted).[7]

---

[7] At the hearing on this matter, Plaintiff suggested that she had 300 days to file her discrimination claims in this Court. Plaintiff is mistaken.  A plaintiff has 300 days to file a charge of discrimination <u>with the EEOC</u> where the charge is initially filed with a state agency that enforces its own anti-discrimination laws.  <u>EEOC v. Dinuba Med. Clinic</u>, 222 F.3d 580, 585 (9th Cir. 2000).  As discussed above, however, a plaintiff has 90 days to file a discrimination lawsuit <u>after</u> receiving a
(continued...)

Here, the EEOC mailed Plaintiff a "Right to Sue" letter on October 2, 2009, though it is unclear when Plaintiff actually received this letter.  Compl. Ex. D.  Because Plaintiff did not assert her discrimination claims until filing the Amended Complaint on July 28, 2010, Defendant argues that the claims are time-barred.  Motion at 7.  As the Court has previously noted, however, "there is a genuine dispute as to whether the newly asserted Title VII and ADEA claims should relate back to the date the original Complaint was filed."  9/20/10 Order at 10.  Given the uncertainty as to when Plaintiff received the Right to Sue Letter, if these claims do relate back to that date – January 6, 2010 – then they may be timely.[8]

Fed. R. Civ. P. 15(c) allows for claims brought in an amended complaint to relate back to the date of the original filing so long as they "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  "The justification for this rule is that once

---

[7]/(...continued)
"Right to Sue" letter from the EEOC.

[8]/ The Ninth Circuit has adopted a rebuttable presumption that a Right to Sue letter is received three days after its issuance date.  Payan, 495 F.3d at 1124-27.  If Plaintiff were unable to rebut this presumption, her discrimination claims would be untimely even if they were to relate back to the date of the original complaint, which was filed 96 days after the Right to Sue letter's issuance.  Because Defendant does not rely on Payan, and Plaintiff's discrimination claims plainly fail on the merits, the Court need not determine whether Defendant is entitled to dismissal under Payan's three-day rule.

litigation has been instituted, a party should not be entitled to the protection of the statute of limitations against the later assertion of a claim or defense arising out of the same conduct, transaction or occurrence already in dispute." Santana v. Holiday Inns, Inc., 686 F.2d 736, 738 (9th Cir. 1982).  Relation back is proper where the opposing party had notice of the factual basis of the added claim and the added claim arises out of the same conduct, transaction or occurrence as set forth by the initial pleading.  See id.

Here, Defendant had notice of the factual basis of Plaintiff's discrimination claims, which arose out of the same conduct, transaction or occurrence set forth in the initial pleading.  As a result, the Court finds that relation back of these claims is appropriate.  Although Plaintiff may have been "adamant" that she was not asserting any discrimination claims in her original complaint, Defendant cites no authority to support its argument that Plaintiff's statements preclude these amended claims from relating back to the date of the original complaint. See Motion at 7.  Accordingly, the Court will consider the merits of Plaintiff's discrimination claims.

B.   Merits

Defendant next argues that Plaintiff's discrimination claims should be dismissed on the merits.  Motion at 9-14. Plaintiff offers no substantive arguments in response.  Opp'n at

16

1-3.  Section 703(c)(1) of Title VII makes it "an unlawful
employment practice for a labor organization . . . to
discriminate against[] any individual because of his race, color,
religion, sex, or national origin."  42 U.S.C. § 2000e-2(c)(1).
Section 623(c) of the ADEA defines unlawful practices by labor
organizations.  It provides, in relevant part:

> It shall be unlawful for a labor organization-
> (1) to exclude or to expel from its membership, or
> otherwise to discriminate against, any individual
> because of his age . . . .

29 U.S.C. § 623(c).

Claims of discrimination under Title VII and the ADEA
are evaluated under the burden-shifting framework set forth in
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Beck
v. United Food & Commercial Workers Union, Local 99, 506 F.3d
874, 882 (9th Cir. 2007) (stating that the McDonnell-Douglas
burden-shifting framework applies to a Title VII action against a
union); see also Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420
(9th Cir. 1990) ("The shifting burden of proof applied to a Title
VII discrimination claim also applies to claims arising under
[the] ADEA.").

"Adapting the McDonnell-Douglas criteria to a
§ 703(c)(1) action, a union member can make a prima facie claim
of discrimination by introducing evidence that the member 'was
singled out and treated less favorably than others similarly
situated on account of race or any other criterion impermissible

17

under the statute.'" Beck, 506 F.3d at 882 (internal citation
omitted).  Specifically, in cases such as this, the plaintiff
must show: (1) the employer violated the collective bargaining
agreement with respect to employee; (2) the union breached its
own duty of fair representation by letting the breach go
unrepaired; and (3) that some evidence indicates that the
employee was singled out and treated less favorably than others
similarly situated on account of an impermissible criterion, in
this case sex, race, color, or age.  Id.; see also Bugg v. Int'l
Union of Allied Indus. Workers of Am., Local 507 AFL-CIO, 674
F.2d 595, 598 n.5 (7th Cir. 1982) (internal citations omitted).
This is known as the Bugg test.

        Plaintiff complains of three acts by Defendant: (1)
"siding" with Mesa, the company that terminated Plaintiff without
giving her supervisory meetings and violated the CBA, (2) failing
to hold "an investigative process with [Plaintiff] to acknowledge
what [she] was suffering from," and (3) failing to "try to
correct the damage done by the [two character-damaging] Letters."
Am. Compl. at 7.  Defendant first contends the Amended Complaint
fails to allege facts sufficient to show that it violated its
duty of fair representation toward Plaintiff with respect to the
first and second alleged acts by Defendant (prong two of the Bugg
test).  Motion at 11-13.  Defendant next argues that the Amended
Complaint fails to allege facts sufficient to show Plaintiff was

singled out and treated less favorably than others similarly situated on account of her being a fifty year old African American woman with dark brown skin (prong three of the Buqq test).  Id. at 13-14.

Because the Court agrees with Defendant that Plaintiff has not alleged any facts to support prong three of the Buqq test, the Court need not address whether Plaintiff has satisfied the second prong of the Buqq test.  As Defendant argues, Plaintiff has made no "allegations from which it could be concluded that Defendant's alleged conduct had anything to do with her sex, race, color, or age."  Motion at 13-14.  Likewise, review of the exhibits attached to the Amended Complaint reveals nothing to indicate that Defendant's allegedly unfavorable treatment of Plaintiff was related to - let alone "on account of" - her status as a fifty year old African American woman with dark brown skin.[9/]  As a result, the Court grants Defendant's Motion to Dismiss with respect to Plaintiff's discrimination claims.

---

[9/] Even at the hearing on this matter, Plaintiff provided nothing but inapposite and conclusory allegations that Defendant treated her less favorably than others similarly situated on account of an impermissible criterion.  That Plaintiff is a fifty year old African American woman with dark brown skin, while the two pilots who wrote disparaging letters about her were Caucasian men under forty years old, is inapposite to Plaintiff's claims against Defendant.  Moreover, Plaintiff's allegations of discrimination would plainly fail to satisfy the Twombly and Iqbal pleading standards even if her discrimination claims were against Mesa.

The Court has already instructed Plaintiff about the deficiencies of her discrimination claims, particularly with regard to her allegations pertaining to prong three of the Buqq test.  6/28/10 Order at 29-31.  The Court also advised Plaintiff to obtain counsel, and it provided a list of pro bono attorneys for her to contact.  Id. at 32.  Because Plaintiff has not heeded the Court's advice, and because any further amendment would be futile, the Court dismisses Plaintiff's discrimination claims with prejudice.  See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002); Eldridge v. Block, 832 F.2d 1132, 1135-36 (9th Cir. 1987); see also Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1167 (9th Cir. 2009) ("The district court's discretion [to dismiss a complaint without leave to amend] is particularly broad . . . where a plaintiff has previously been granted leave to amend and fails to add the requisite particularity to her claims.").

II.      **Duty of Fair Representation Claim**

         A.    **Basis of Plaintiff's Claim**

A union breaches its duty of fair representation if its conduct toward a member is arbitrary, discriminatory, or in bad faith.  See Vaca v. Sipes, 386 U.S. 171, 190 (1967); see also Beck v. United Food & Commercial Workers Union, Local 99, 506 F.3d 874, 879 (9th Cir. 2007).  The duty of fair representation extends to the investigation and representation of a grievance.

See Evangelista v. Inlandboatmen's Union of Pac., 777 F.2d 1390, 1395 (9th Cir. 1985) ("A union's duty of fair representation includes the duty to perform some minimal investigation, the thoroughness of which varies with the circumstances of the particular case.").  A union must exercise special care in the discharge context because discharges are the most serious sanction an employer can impose.  Tenorio v. N.L.R.B., 680 F.2d 598, 602 (9th Cir. 1982).

The precise basis of Plaintiff's duty of fair representation claim is unclear.  Plaintiff alleges that she was victimized by being terminated by Mesa and "re-victimized" by Defendant's June 11, 2008, and August 6, 2008, letters.  Am. Compl. at 1-2.  In the "Why I Claim Title VII and its Amendments, ADEA, and Bad Faith Violations" section of her Amended Complaint, Plaintiff states the following:

> I believe the evidence I have presented speaks on my behalf of the willful and bad faith way Defendant sided with the Company that had terminated me without giving me any supervisory meetings, and which Company had also violated the CBA – and Defendant never held an investigative process with me to acknowledge what I was suffering from, nor did same ever try to correct the damage done by the Letters.
> I believe a meaningful investigation into what I was going through would have culminated in my regaining FA Wings.  If Defendant does not admit to discrimination and bad faith dealings with me, I ask again that the evidence I have presented herein be able to Speak the Discrimination they won't admit...I cannot come up with any good reasons why Defendant should have sided with [Mesa] against me and willfully kept resolution from me of [Mesa's] violation of CBA regarding the Letters.

Id. at 7-8.  Finally, in her opposition to Defendant's Motion, Plaintiff states that her Amended Complaint "presents evidence of how much Defendant did not do for me as my sole union representation and how much those negative acts reveal Defendant's anti-discrimination laws and bad faith violations toward me."  Opp'n at 1.  Plaintiff further contends Defendant did not investigate Mesa's failure to train and support her, did not fight for her job, and violated her trust in Defendant as her sole union representation.  Id. at 2.

In light of these statements, the Court presumes Plaintiff's duty of fair representation claim is based on Defendant's alleged refusal to take her case to arbitration and its allegedly deficient investigation and representation of Plaintiff's grievance, including its alleged failure to address the two character-damaging letters.  The Court further presumes this claim alleges that Defendant's conduct toward plaintiff was arbitrary, discriminatory, or in bad faith.  See 6/28/10 Order at 36-43, 45-47 (granting Plaintiff leave to amend the Complaint to allege Defendant's failure to address the letters was discriminatory or in bad faith (in addition to the Complaint's allegations that such failure was arbitrary); dismissing Plaintiff's unfair representation claim to the extent it alleged Defendant's decision not to arbitrate her case was arbitrary, but

granting Plaintiff leave to amend the Complaint to allege such decision was discriminatory or in bad faith).

### B.    Statute of Limitations

Defendant argues that Plaintiff's duty of fair representation claim should be dismissed because it is barred by the governing statute of limitations.  Motion at 6-7.  Plaintiff offers no substantive arguments in response.  Opp'n at 1-3.

The National Labor Relations Act's six-month statute of limitations for the filing of unfair labor practice claims is applicable to suits against a union for breach of the duty of fair representation.  DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 169-72 (1983).  "[I]n a duty of fair representation case, the six-month [limitations] period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986).  "A reasoned analysis of the question when a duty of fair representation claim accrues must focus on the context in which the claim arose."  Id.  Where a duty of fair representation claim is based on alleged errors in presenting a grievance before an arbitrator, the limitations period accrues when the claimant learns of the arbitrator's decision.  Id.; see also Myers v. S. Cal. Gas Co., 229 F.3d 1158, 1158 (9th Cir. 2000) (unpublished disposition) (finding that the plaintiff's duty of fair

representation claim accrued, at the latest, after he had "concluded that the Union had not properly represented him" and when he was told by the Union "there was nothing more that the Union could do for him, and that his 'only alternative' was to consult a lawyer").[10]

Here, Plaintiff alleges that she communicated with Defendant about her various issues with Mesa, including her termination and the damaging letters, until August 6, 2008.  See Am. Compl. Exs. B to E-12.  On June 11, 2008, Defendant informed Plaintiff by letter that the System Board could not resolve her case and it could be taken to arbitration.  Id. Ex. B at 1.  It also informed Plaintiff that while her grievance had not been withdrawn, Defendant would not take the case to arbitration because "it did not believe that [it] would prevail at arbitration."  Id.  Finally, the June 11 letter informed Plaintiff that she could pursue arbitration, although if she were to do so she would be responsible for retaining counsel and bearing the necessary costs.  Id.  On August 5, 2008, Plaintiff "requested information [from Defendant] about how to appeal the decision not to take [her] case to arbitration."  Id. Ex. B at 1.  On August 6, 2008, Defendant informed Plaintiff by letter that

---

[10] In accordance with U.S. Ct. of App. 9th Cir. Rule 36-3, the Court is not relying on Myers, an unpublished disposition, although it finds this case instructive.

there was no way for her to appeal its decision not to arbitrate her claim.  Id.  Defendant also informed Plaintiff once again that she could take her case to arbitration, but would have to bear the costs of doing so.  Id.

The Court agrees with Defendant that by August 2008, Plaintiff knew or should have known of the alleged breach of Defendant's duty of fair representation.  Motion at 9.  By this point Plaintiff knew or should have known about Defendant's efforts on her behalf, that such efforts had not been successful, and that Defendant would not be pursuing Plaintiff's case further.  See Archer v. Airline Pilots Ass'n Int'l, 609 F.2d 934, 937 (9th Cir. 1979) ("To identify the time of accrual, courts look to (1) the date on which the last 'action by the Union of any consequence occurred'; and (2) 'the point at which any injury to (the union member) allegedly caused by the Union became fixed and reasonably certain.'" (citation omitted)); see also Galindo, 793 F.2d at 1510-11 (concluding that a plaintiff's claim that his union had mishandled his arbitration accrued when the plaintiff learned of the arbitrator's decision); Myers, 229 F.3d at 1158.

Because Plaintiff's duty of fair representation claim accrued as of August 2008, the applicable statute of limitations expired in February 2009.  Consequently, even though this claim relates back to January 6, 2010, when Plaintiff filed her original complaint, the claim is time-barred.  The Court reached

the same conclusion in its 6/28/10 Order, and it also noted that equitable tolling of the limitations period did not appear justified.  6/28/10 Order at 41 n.15.  The Amended Complaint suggests no reasons why Plaintiff is entitled to equitable tolling, and no such reasons are now apparent to the Court.[11] Accordingly, the Court grants Defendant's Motion to Dismiss with respect to Plaintiff's duty of fair representation claim.

Because amendment of this untimely claim would be futile, this dismissal is with prejudice.  Moreover, the Court's 6/28/10 Order addressed why Plaintiff's duty of fair representation claim was likely time-barred.  6/28/10 Order at 41 n.5.  As a result, Plaintiff was on notice that she needed to allege facts demonstrating that her claim was timely and/or that the statute of limitations should be tolled.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  Because the Court's dismissal is with prejudice, the Clerk of the Court is directed to enter judgment in favor of Defendant, and close this case.

---

[11] At the hearing in this matter, Plaintiff contended tolling was warranted because Defendant concealed from Plaintiff "its belief" in the character-damaging letters.  The Court finds, however, that Plaintiff has not sufficiently alleged Defendant "believed" these letters or concealed such belief from Plaintiff.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai‘i, November 18, 2010.



_____
Alan C. Kay
Sr. United States District Judge


<u>Nosie v. Association of Flight Attendants, CWA, AFL-CIO</u>, Civ. No. 10-00062
ACK-LEK: Order Granting Defendant's Motion to Dismiss